Michelle Treault v. Reliance Standard Life Insurance Company, et al. May it please the Court, good afternoon. My name is Jonathan Feigenbaum. I represent Michelle Treault. Before I begin, may I reserve three minutes for rebuttal, Your Honor? Yes. Thank you. All right, there's two broad areas, topics that I'd like to discuss today. The first topic begins with the understanding that the ERISA statute is primarily a notice statute. A cornerstone of the entire ERISA scheme is that substantive plan terms must be set forth in writing. The purpose behind that is, one, so the employee knows what her obligations are, and secondly, so the plan administrator knows what its obligations are. And in that vein, plan sponsors, typically an employer, have great latitude to draft plans virtually unfettered. Now given the foundation of the law, coupled with the freedom to contract, that leaves the plan sponsor with the opportunity to set a pre-suit appeal deadline in the plan. And if an employer or plan sponsor wants to set a pre-suit appeal deadline, it needs to be in the plan. It's no different than a contractual limitations period. And let me point to the part of the statute in ERISA that you think requires the claims procedure to be in the written instrument. The part of the statute? It's not, well, under 139 U.S.C. 133, the employer has to have some procedure to provide full and fair deadline. It can't be enforced. But to answer your question directly, it's not in the statute. The statute really leaves the plan sponsor with great freedom to draw up a plan as it wishes. Just one more version of it. The statute specifically says certain things have to be in the written instrument. On the welfare benefits side of ERISA as opposed to the pension side, the statute provides very little about what has to go into a plan. So where does the claims procedure fall on that? It's a material term of the plan. All material terms of the plan must be in writing in the plan. What would I call a material term? This is a long-term disability plan. How much in dollar benefits will someone be paid? What is the time period the benefits will be paid? Those are all contractual limitations. Those are all material terms. They have to go into the plan. But there's a provision of the statute that says the basis of payment has to be in the written instrument. I can't say that. No, there is nothing in the statute that says the basis of payment must be in the plan. No, no, there is something in the statute, I thought, that says that. Certainly on the pension side. I see. Certainly on the pension side, which I'm opposed to describing differently as the welfare benefits side. But let me go back and just give you a quick little rundown how this claim worked in the real world and typically a claim works. Ms. Tatro received benefits for about eight years until her claim was terminated. Six of those were paid by MetLife after she litigated the claim out in Nevada in round one. In January 2007, Reliance Standard was substituted as the insurer for MetLife. When Ms. Tatro received an adverse benefit letter, plain English, her benefits were terminated in December of 2008. I wrote to the plan. I requested three things that I normally do. One, produce the claim file, produce the LTD plan, and produce the summary plan description. You said you wrote to the plan? Excuse me? You said you wrote to the plan? I wrote to Reliance Standard. Okay. And that's different than the plan? Correct. I wrote to the fiduciary, though. Reliance Standard was certainly a fiduciary, Your Honor. For purposes of deciding claims, Reliance was the claim-making fiduciary? Reliance is a fiduciary for purposes of deciding claims. And I suggest under First Circuit law versed Ernst & Young that by de facto it had stepped into the role of providing a copy of the plan. And I don't think it really makes any difference if we start dividing the duties. So Reliance wrote back to me, and here's what Reliance sent me. The 1998 long-term disability plan. It sent me the claim file. Excuse me? Don't. It does make a big difference. Which makes a big difference? As to whether it was the claim administrator or the plan administrator. I mean, that's a big point, so don't. Well, all right. Let me belabor that then. The way the statute reads is in terms of asking for plan documents, it uses the term administrator. It's in, I think, Section 21 of the definition in terms of who may be liable for not producing documents. Administrator. Lots of courts have read into that. That term really means plan administrator, but that's incorrect. If you looked at the text, it uses the term administrator. Judge Kahan? The administrator is the one who has the plan. I mean, you know, if you want to find a plan, you know one place that it has to be under ERISA is with the plan administrator. It's supposed to be, but in reality often it's not. If someone's following the law, isn't the format, the plan actually specifies who the administrator is? Sometimes. By default, it's the plan sponsor, the employer. Right. So the first place you go is you look in the plan to see who the administrator is. It tells you. If it tells you someone, that's it. If it doesn't, it's the plan sponsor. Right, but I didn't have the plan. Reliance Standards sends a letter saying your benefits are terminated. Right, but wouldn't you usually write to the employer, the plan sponsor, to get the plan? We'll find out who the plan administrator is. Sometimes, but it's not essential. Let me explain why it's not essential. For example, in this case, if Reliance is administering the claim, I would expect that Reliance has a copy of the plan. If Reliance doesn't have a copy of the plan, how could it administer the claim? It couldn't. Reliance wrote back to me within weeks and said, here's a copy of the 1998 plan. If Reliance didn't want to produce it, it might have said, we are not the plan sponsor. Don't rely on us. Get it from the employer. But here, Reliance undertook a duty by producing the 1998 plan. Right, but that's a very different argument than the argument you're making. And I think it makes sense what you're saying is that if you ask them for something and they give you something that isn't it, then maybe they have breached a fiduciary duty to you and might have some liability if you've been harmed by that. And I raised that before the district court. But you're asking for sanctions under the statute which are applicable only when you ask the plan administrator for a document and they don't give it. There's no negligence standard. You get the sanctions whether or not you've been harmed. I disagree with that, Your Honor, because the statute uses the term administrator. It does not say plan administrator. It doesn't. So many courts have read the term plan administrator in. Reliance likes to call itself a claims administrator. There's no such term in the statute. So then if I follow the logic of your argument correctly, if the claims making fiduciary sends nothing, they're liable then? No. Well, if they're the administrator and they sent nothing, then why aren't they liable? Because on those circumstances, the claims administrator could take the position, we're not going to produce the document, get it from the plan administrator. But then you've just conceded they're not the administrator under the statute, because the administrator under the statute has an absolute statutory obligation to provide the plan if you ask for it. But it depends on, well, we're using this term claims administrator that doesn't exist. So I take back what I said. I like using the term fiduciary. If the insurer is a fiduciary, it makes them an administrator, and they're potentially liable if they don't produce the plan. But now you've combined two features. You've combined the obligations of a fiduciary under ERISA, which we have the whole set, and which include as a component of a claim for breach of fiduciary duty, causation and harm. Yes. But your claim is predicated on the separate section of ERISA, which imposes an absolute obligation with no requirement of causation or harm in order to get statutory penalties on the administrator. Now you're telling us that Reliance wasn't the administrator. No, Reliance was an administrator. Reliance was a fiduciary. Courts have read into the penalty section, which is not the primary claim here, that there is some duty to show prejudice. I think I might quarrel with that and say it's an incorrect reading, but that is how the law has developed in certain areas. The real problem here is Reliance spoke and misled my client. So let me go back to, so I asked for the plan. I'm sorry, but Reliance spoke and said there was a 180-day time limit. Right, and that is not in the plan. They spoke, that was their position, and that's not misleading. That is misleading because it is not in the plan. It's not in the plan that was sent to you. It's in the 2005 plan incorporated by reference. I beg to differ, Your Honor. Didn't they send you a letter saying you have 180 days? That's correct. Didn't you write them yourself within the 180 days? Yes. The time limit to file an appeal is not in the 1998 plan, and in the 2005 it's not in there. What it says is we incorporate by reference the SPD. Which contains 180 days. The SPD also says file your appeal with MetLife, and it was so out of date. The SPD was not produced pre-suit. It was not produced until we were mediating the case. And what the SPD says is if you want to appeal, write to MetLife. It gives a PO box in Lexington, Kentucky. The plan, the SPD dates from January 1, 2005. Technically the plan sponsor or the plan is in violation of section 1024B of ERISA for failing to provide a material modification update to my client. So this was not one of those cases where the SPD, we'll say, was incorporated by reference into the 98 plan. That's the plan I relied on. If the 2005 plan had been produced with the SPD, which I asked for, because it would have had to have been produced if Reliance was producing the entire plan, arguably I was on notice of the 180 days. You had a letter saying it was 180 days. May I respond? Yes. I did have a letter, Your Honor, but the letter, you can't amend a plan with a letter from a client. You're saying you disregarded the letter because you looked in the old plan and saw no deadline in the old plan. Correct. And if I had seen the 2005 plan, given that the SPD had never been produced, I would not have seen a deadline. If I saw a deadline in the plan, it would have been complied with. Thank you. May it please the Court. Good afternoon. Joshua Backrack. I represent the Appellee's Reliance Standard and the Limited Long-Term Disability Plan. I think one of the problems here, and I'm kind of surprised that it was phrased this way by counsel, is that this is a self-funded plan. This is an insurance policy plan, and MetLife was the administrator of claims under it, and then it became Reliance Standard was administering claims under it. So when he's saying that my client should have had the plan documents and should have had all this stuff, this isn't your typical situation with an insurance plan. So it was with the employer, it was with the Limited, and counsel has copies of all those documents. The reason he didn't have them earlier was he never asked for them, and that's the big problem here. I think it's funny. He says that in the 2005 SPD, it says, well, you could ask MetLife for the appeal. Well, if we provided him with that information and he appealed it to MetLife and we said, aha, you didn't appeal it to us within 180 days, then we would have misled him. But there was absolutely no misleading here at any point in time. Judge Barron, you had asked counsel about what is required of a written instrument, and that's 29 U.S.C. 1102B, and it sets forth what has to be in there, and it specifies the bases for benefits, and it sets really the terms, what you would call the substantive parts of a plan. Well, it doesn't say that. I guess it says the terms of basis of the payment. Yes, the terms of basis for the payment. Could a claims procedure be the terms of basis of a payment? No, because there's a separate section that says this must be in the summary plan description. Well, you might think that, unlike other things, it's awfully important. So we also want to make sure that the details of this are in the summary plan description. That wouldn't tell you necessarily it shouldn't be in the written instrument, too. Well, I can tell you. Actually, I'll do one better. I'll refer to Judge Thompson's decision in a case a few years ago called Ortega-Candelaria, and that was 661 F3rd 675. And in that case, it's kind of interesting. The deadline to file a lawsuit was stated in the SPD, but it was not stated in the decision letter. And what Judge Thompson said, and I think correctly so, was that they're going to look at this letter. This is the most important thing is this denial letter that they have in their hands, and they're going to see that in that letter does it explain to you when you have to do things. And in that case, they didn't do it intentionally, but the employer didn't state it. Well, I can see how it would go here. You might say that there's no prejudice because they got a letter telling them what the 180 days were, except for the fact there's a reg, the deemed exhaustion reg, which seems to say that if you don't get notified of the claims procedure that has to be established, if you don't get that, it doesn't matter whether there's prejudice. Oh, no, no. I entirely disagree with that statement, Your Honor. Terry versus Bayer Corporation, which is a First Circuit decision, and Recupero, well, Terry is 145F328, and Recupero versus New England Telephone and Telegraph, 118F3120. First Circuit decisions, both of which say that in the absence of prejudice, even if there's a procedural irregularity, in this case, we're saying there is none, but for argument's sake, if there's a procedural irregularity, you have to show prejudice. Are those cases constructions of this reg? They deal with this specific regulation, yes. The deemed exhaustion reg. It's all under 29 CFR 2560.503-1. There are different subsets. Terry did discuss exhaustion, and the claim was I didn't have to exhaust because you did not provide me with a detailed enough letter on telling me what I needed to do to perfect my appeal. His claim here is you don't have to exhaust, I take it, because you did not ever establish a claims procedure because the only way to establish it is in the written instrument of the plan. What's wrong with that, I guess? Well, there are a few things wrong. It doesn't have to be in the plan itself. In this case, it is, though, so there's no harm, no foul, but it doesn't have to be. You look at all of the cases that have discussed this issue, and they talk about it being in the summary plan description. Why? Because that's what the statute says, the procedure has to be in the summary plan description. The regulation to that statute says it has to be in the summary plan description. And that's, again, 29 CFR 2520.102, talks about what the summary plan description must include, and it includes remedies available under the plan for redress of claims that are denied. So it specifically says you must include this in the summary plan description. It doesn't say you have to also include this in the plan. Nowhere does it say that. Could you include one, take a plan that says you've got two years, and then you have a summary plan description that says 180 days. It's two years. It would definitely be, it would. If the person relies on it and is misled. Well, no. Why does it make any difference? I'm sorry. Doesn't the plan under Romero trump the SPD, except to the extent that something in the SPD misleads the person? That's the point. But the person here would not have been misled by the SPD, so they'd be able to rely on the plan if the plan said two years. I believe so. But we don't have that situation. So here isn't the argument, though, that it's just one step to move. If you had a plan that was entirely silent, then might someone in plaintiff situations say, well, I can ignore this SPD because I'm knowledgeable on ERISA law and I've looked at the plan and it looks like it's completely silent. So there is no claim deadline. Could someone reason that way? I don't. No, Your Honor. I don't agree with that, only because, again, I think there has to be a showing of prejudice under Terry and under Recupero and under a whole host of decisions from every other circuit. So if there's something not in there, that doesn't mean, oh, I can now assume there is no deadline, especially when you're talking about an attorney who handles these day in, day out. He knew the deadline. He knew the 180-day deadline. He ignored it. That's the plain fact here. So if there's misleading, and that's the key to Amara, if there's something misleading that's provided, then they have a claim. They have a basis for equitable tolling, and that was Your Honor's decision in Ortega was based on equitable tolling. That goes the other way. That's a claimant-friendly doctrine, that even though something's not in the plan, if it's in the plan, you get it. You get a claim for benefits due under the plan. If it's in the SPD, you get it. Even if it's not in the plan, if you detrimentally relied on it. Correct. But here we're positing that there's nothing in the ERISA plan itself. So there would have been no detrimental harm caused to the beneficiary by the misleading SPD. He would just be saying there is no, I'm ignoring the SPD. He's not relying on it. Yes, and that's hypothetical, obviously, because in this case, it's in it. It's incorporated into it. And is it because the SPD is the plan also as a result of the incorporation? It is a part of the plan, yes, because it specifically incorporates it into the plan. And just so I, just thinking how that works, that means if the SPD is changed in any way, it can only be changed consistent with the procedures for amending the plan? I'd assume that to be correct. So any little modifications, all that kind of stuff, you do it by doing it through the amendment procedures? Well, see, here's the thing, Your Honor. What happened was, and counsel asked, why did we only have the 1998 plan? Because that's the one that governed her substantive claim. Your rights vest in the plan under which when you become disabled, and in her case it was the 98 plan. That's why we had a copy of the 98 plan. But procedures, ERISA procedures changed in 2000. The Department of Labor changed the deadline to submit an appeal from, I think it was 90 days to 180 days. It might have even been 60 days. But anyway, they changed the deadline. It was 90. They changed the deadline. So that's why the SPD changed at some point along the way, too. But the point, and again, I don't mean to keep harping back onto this, but the issue is prejudice. And that's why we submitted a Rule 28J letter to the court, and that discussed the 10th Circuit decision called Holmes. And in that case what happened was the SPD was deficient. And I think it's important, again, that case says to all these decisions, the D.C. Circuit, the 2nd Circuit, the 5th, 6th, 8th, 10th, 11th, all these circuits say, even if you don't put in the SPD, if it's known and there's no prejudice to the claimant, we're not going to excuse your failure to exhaust. And I think those cases are important for the specific reason that they all talk about it being in the SPD or not. None of them, none of them say, you have to put it separately in the plan. Holmes specifically says only, you didn't put it in the SPD. Same with Ortega. You did put it in the SPD, but it doesn't address the issue of whether it should have also been in the plan, because it shouldn't. And what's the significance of MetLife being the named actor in the SPD, in your view, as opposed to the actual person who's? In this case, none, because the claimant wasn't misled in any way. If the claimant received that document, appealed to MetLife, MetLife sat on saying, we don't have any involvement here anymore. Throw it out. And then my client comes back and says, you missed the 180-day deadline. We would then have misled them. Or MetLife, actually not myself, the limited plan would have misled them, and I would have said, yeah, that's a prejudice there. But in this case, everything said to them, you have 180 days. In fact, four days before that 180 days expired, they wrote to my client saying, we will be appealing, and we all know that's not sufficient. And my client immediately wrote back and said, no, you have to do it on time, two days before the deadline. If they didn't send that letter, then maybe there's prejudice there, but, oop, you led me to think it's okay. Another important aspect. Can you show whether that was mailed or faxed? It was faxed. It was faxed right to them. Another important thing that I think out of the Ortega case, Judge Thompson, is you said, in this case, equitable tolling might be an issue if there was undue delay, lack of diligence. But there wasn't in that case. In this case, let's look what happened. He said, I'm going to appeal it at some point. He waits 11 months. But when you look at what the appeal involved, all but two pages out of 1,200 were in his possession by the deadline to appeal, the 180 days. Those two extra pages arrived in July 2009, one month after the appeal deadline. Nothing prevented him from saying, here's my appeal, here are the 1,198 pages, I'm trying to get some more records in, and I'll get them to you. Because, frankly, by the time he got those, the decision would not have been made. It was within 45 days. So there's such an undue delay. He has to show, he's asking this Court to equitably extend a deadline, and there's no equitable basis to do this in this case, because everything was told was factual. I do have to clear up another couple points that I think are wrong that were mentioned. And one is, you know, Section 502C, the penalty section, refers to the term administrator, and we were told that it's erroneously referred to as the plan administrator. But let's look at the definition of administrator in the statute itself. That's 29 U.S.C. 1002-16A, and it doesn't say plan administrator, it also says administrator. The term administrator is the person specifically so designated. So that's consistent. It's all consistent here. And I have to, before time runs out, because this is real important, is address the law case. Because absolutely it does not support his claim that my client can be the plan administrator. What happened in law was the employer set up this separate committee and said they're the plan administrator within the employer's control, though. The employer did everything. And what this court said in law, which is 956 F. 2nd. 364, in three separate places referred to the fact of the relationship between that entity, the committee and the employer. In fact, on page 373, the court says that we're an entity of which the administrator is a part, in effect holds itself out. Well, that's not the case here. Reliant standards is a part of the limited. Then it also talked about on the next page, 374, the closeness of the two entities, that committee and the employer. And then really what's the coup de grace to this whole thing is the court discusses other cases, including Moran v. Aetna out of the Ninth Circuit and Davis out of the Sixth Circuit, I believe is the other one that it mentioned, the D.C. Circuit. And what it said was we're not different than these cases, which said plan insurers cannot be considered de facto plan administrators. And it said that because these entities were clearly distinct from the plan administrator. Just like Reliant standard is clearly distinct. Quick point. In the Moran case, Aetna erroneously said it was the plan administrator when it wasn't. And the court said you still can't be held responsible for penalties because you're not. In this case, counsel says you responded to my letter. We did. We responded to the letter because he said pursuant to the ERISA regulations, which apply to the claims decision maker. So we weren't responding as the plan administrator. We never said we were the plan administrator. We were responding as the claims administrator. The district court correctly held that there was no prejudice. We provided the deadlines. And in any event, everything was included in the documents. So there can't be any prejudice here. And the de facto plan administrator claim does not exist. Thank you, Your Honors. Thank you. I heard my colleague make a very important admission. He said my client's claim vested under the 1998 plan. If her claim was governed under the 1998 plan as a contend and now has been admitted, the 1998 plan, and I can't overemphasize this, does not have any pre-suit appeal deadline and does not have a contractual limitations deadline. Under Ohio law, she had 15 years to bring suit. And when the district court decided that the pre-suit appeal deadline is, quote, ministerial and not substantive, it had the effect of turning a 15-year statute of limitation into 180 days with the effect of foreclosing her claim on the merits forever. That was just plain wrong. As the Supreme Court has pointed out, repeat, well, in Amera, very clearly summary plan descriptions tell us about plan terms. They do not add plan terms unless, of course, the one instance where the plan actually incorporates the SPD by reference. The 1998 plan does not incorporate the plan by reference. I also heard my friend Mr. Bachrach say repeatedly there's no prejudice with what Reliance produced. Of course there was prejudice. They produced the 98 plan. If I had been given the 2005 plan with the SPD, I would not have taken any chance of not filing the appeal within 180 days. Because at the same time I litigated this case, I litigated a case against Prudential. Judge Barbadero in New Hampshire decided because the claim deadline was in the SPD only, under the Amera ruling, the 180 days could not be incorporated into the plan. A week later, after Judge Dean made her decision in this district, Judge Collings reached a different conclusion in a Liberty Life Assurance Company of Boston plan. Again, because there was an absence of a procedural deadline in the plan. Liberty tried to bootstrap it in from the SPD. Prudential tried to bootstrap it in from the SPD. I believe both district court judges, Magistrate Judge Collings and District Court Judge Barbadero, read Amera correctly saying you cannot add plan terms indirectly. The case that's on appeal from Judge Dean and Judge Toro should have reached the same conclusion. Because the 98 plan, there is an absence of the 180 days, and saying I was saying that the plaintiff was bound by the 2005 plan was prejudicial because Reliance Standard had failed to produce it pre-suit. Thank you.